IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS M. SMITH, #Y11769, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 24-cv-02483-SMY |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| LATOYA HUGHES, ) | |
| DR. GENTRY, ) | |
| AND JOHN BARWICK, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**YANDLE, District Judge:**

Plaintiff Thomas M. Smith, an inmate in the custody of the Illinois Department of Corrections, filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations stemming from the denial of transition lenses at Pinckneyville Correctional Center. The Complaint is now subject to preliminary review under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *Id*. Plaintiff also filed a motion for emergency injunction (Doc. 2) to request court-ordered transition lenses.

**The Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-4): While housed at Shawnee Correctional Center, Plaintiff was diagnosed with a progressive astigmatism that causes extreme light sensitivity (photophobia), sun blindness, headaches, and eye pain with exposure to bright lights. To reduce his light exposure, Shawnee's eye doctor added transition lenses to Plaintiff's eyeglass prescription.

1

In September 2023, before receiving his new eyeglasses, Plaintiff transferred to Pinckneyville Correctional Center. Dr. Gentry, Pinckneyville's eye doctor, also approved transition lenses. Plaintiff waited five months for the new eyeglasses to arrive. When he finally received them, the glasses had no transition lenses. Pinckneyville's health care unit (HCU) administrator explained that the Regional Director of Wexford Health Sources, Inc. intervened and denied the transition lenses as unnecessary. Plaintiff claims this was only done to save the private health corporation money.

Plaintiff met with Dr. Gentry to discuss the matter, and the doctor explained that Wexford routinely denied funds for transition lenses when he prescribed them. During this meeting, Plaintiff asked Dr. Gentry for a second prescription for transition lenses or treatment for pain. Dr. Gentry agreed to prescribe transition lenses again. But, when Plaintiff received his second pair of eyeglasses two months later, they had no transition lenses. Plaintiff looked into the matter and learned that Dr. Gentry never actually prescribed transition lenses a second time. Dr. Gentry also failed to address his complaints of pain.

Plaintiff filed an emergency grievance to complain about Dr. Gentry's denial of treatment, and Warden Barwick denied the grievance. He then submitted 4 sick call requests for treatment with Dr. Gentry, sent 2 or 3 grievances to Latoya Hughes' office, and filed a complaint against Wexford. To date, he has not been seen or treated. Plaintiff continues to suffer extreme light sensitivity, sun blindness, eye pain, and headaches with exposure to bright lighting.

Based on the allegations, the Court designates the following claims in the *pro se* Complaint:

Count 1: Eighth Amendment claim against Wexford for intervening and denying Dr. Gentry's initial prescription for Plaintiff's transition lenses in order to save on the cost of inmate medical care.

Count 2: Eighth Amendment claim against Dr. Gentry for denying Plaintiff's second

>prescription for transition lenses and for failing to treat his extreme light sensitivity, sun blindness, headaches, vision impairment, and eye pain caused by exposure to bright lights at Pinckneyville.

Count 3: Eighth Amendment claim against grievance officials (Warden Barwick and Acting IDOC Director Latoya Hughes) for denying or disregarding Plaintiff's grievances about the first and second denial of transition lenses.

Any other claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Discussion

### Count 1

To state a colorable claim for the denial of medical care under the Eighth Amendment, a plaintiff must describe: (a) an objectively serious medical need; and (b) deliberate indifference by each defendant. An objectively serious medical need is one that has been diagnosed by a physician as requiring treatment or one where the need for treatment would be obvious to a lay person. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference occurs when a defendant knows about a plaintiff's need for treatment and disregards an excessive risk to the inmate's health. *See Tuduj v. Lawrence*, 829 F. App'x 120 (7th Cir. 2020); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Treatment delays that exacerbate a serious medical condition or cause unnecessarily prolonged pain may also constitute deliberate indifference. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

The Complaint describes an objectively serious medical need. Plaintiff alleges that eye doctors at Shawnee and Pinckneyville diagnosed him with photophobia caused by a severe astigmatism that necessitated the use of prescription eyeglasses with transition lenses. He also

alleges that he experiences extreme pain, severe headaches, and vision impairment with light exposure.

The deliberate indifference claim against Wexford in Count 1 turns on whether a policy, custom, or practice attributable to the private medical corporation caused a violation of Plaintiff's constitutional rights. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 786 (7th Cir. 2014) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). Plaintiff alleges that Wexford's regional director intervened and denied the initial prescription for transition lenses to save on the cost of inmate medical care, and that Dr. Gentry later described Wexford's denial of transition lenses as routine. Those allegations suggest that the initial denial of transition lenses stemmed from a policy, custom, or practice of Wexford, rather than an independent decision of its regional director. Therefore, Count 1 survives screening against Wexford.

**Count 2**

The deliberate indifference claim against Dr. Gentry arises from his alleged failure to re-issue a prescription for transition lenses when the initial prescription was not filled, and his alleged failure to treat Plaintiff's complaints of pain. A deliberate indifference claim may proceed against a medical provider who idly stands by while an inmate with a known medical need receives no treatment and suffers from unnecessarily prolonged pain. *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016). Plaintiff alleges that Dr. Gentry took no action to address his complaints of photophobia and pain. Therefore, Count 2 will proceed against Dr. Gentry.

**Count 3**

Section 1983 creates a cause of action based on personal liability and predicated upon fault; liability requires allegations that a defendant directed, participated, and/or consented to the misconduct causing the deprivation. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir.

4

2005). Grievance officials cannot be held liable based solely on their involvement in the grievance process. Therefore, to state a viable deliberate indifference claim against Warden Barwick and Acting Director Hughes, Plaintiff must sufficiently allege that each defendant was personally involved in a violation of Plaintiff's Eighth Amendment rights. Because Plaintiff's allegations do not suggest that the Warden or Acting Director had any involvement in the decisions to deny transition lenses or deny pain treatment, beyond the grievance process, he fails to state a plausible claim of deliberate indifference against them. Therefore, Count 3 will be dismissed without prejudice against Warden Barwick and Acting Director Hughes, in their individual capacities.

## Motion for Emergency Injunction (Doc. 2)

Plaintiff seeks an emergency court order compelling the defendants to provide him with transition lenses to avoid unnecessary pain and a possible inmate attack. The Court construes this request as a motion seeking a temporary restraining order (TRO).

A TRO is issued without notice to the party to be enjoined and may last up to 14 days. *See* FED. R. CIV. P. 65(b)(2). It may issue only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *See* FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

Plaintiff provides insufficient information in support of his request. He does not indicate how recently he requested and was denied transition lenses, how frequently he suffers from the above-listed symptoms, how often he is currently exposed to the level of light that causes these symptoms, and whether he has access to other non-transition lenses or items that reduce his light exposure, such as sunglasses, a sleep mask, a sun visor, or a hat. Nor does Plaintiff provide

information suggesting that he has been threatened with or faces any immediate risk of physical harm by other inmates. Given this, the Court does not find that Plaintiff faces immediate or irreparable harm or a substantial risk of harm warranting a TRO at this time. Plaintiff's Motion for Emergency Injunction (Doc. 2) is denied.

## Disposition

The Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A, as follows:

- **COUNT 1** will proceed against **WEXFORD HEALTH SOURCES, INC.**

- **COUNT 2** will proceed against **DR. GENTRY**.

- **COUNT 3** is **DISMISSED** without prejudice for failure to state a claim against **JOHN BARWICK** and **LATOYA HUGHES**.

- The **CURRENT WARDEN OF PINCKNEYVILLE CORRECTIONAL CENTER** is **ADDED** as a defendant in an official capacity for purposes of implementing any injunctive relief ordered in this case.

Plaintiff's Motion for Emergency Injunction (Doc. 2) is **DENIED** without prejudice.

The Clerk shall prepare for **WEXFORD HEALTH SOURCES, INC.** and **DR. GENTRY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant. The Court will require Defendant to pay the full costs of formal service, as authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as

directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Under Administrative Order No. 244 and SDIL-LR 8.2, Defendants should only respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to ENTER the Court's standard HIPAA-Qualified Protective Order; ADD the CURRENT WARDEN OF PINCKNEYVILLE CORRECTIONAL CENTER as a defendant, in an official capacity only, for purposes of implementing any injunctive relief herein; and TERMINATE Defendants JOHN BARWICK and LATOYA HUGHES as parties in CM/ECF.**

IT IS SO ORDERED.

DATED: 2/13/2025

s/ *Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

## **Notice to Plaintiff**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter their appearances and file Answers to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have all filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' attorneys have filed appearances will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.