**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THOMAS M. SMITH, #Y11769, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 24-cv-02483-SMY |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| DR. GENTRY, and JACQUELINE | ) |
| LASHBROOK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiff Thomas Smith filed this action against Defendants Wexford Health Sources, Inc. and Dr. Gentry pursuant to 42 U.S.C. § 1983 for alleged Eighth Amendment violations stemming from the denial of transition lenses.[1]  (Doc. 1).  Defendants now seek summary judgment based on Plaintiff's failure to exhaust his administrative remedies before filing this lawsuit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  (Docs. 54, 57).  Plaintiff opposes both motions.  (Doc. 60).  Because the undisputed evidence establishes that Plaintiff failed to exhaust his remedies in compliance with the PLRA before filing suit, summary judgment will be **GRANTED**.

### BACKGROUND

Plaintiff Thomas Smith filed this action pursuant to 42 U.S.C. § 1983 against Wexford Health Sources, Inc., and Dr. Gentry for denying him transition lenses.  (Doc. 1).  Plaintiff alleges he was diagnosed with a progressive astigmatism at Shawnee Correctional Center.  *Id*. 1-4.  The

---

[1] Warden Jacqueline Lashbrook was added as a defendant in an official capacity for the purpose of implementing any injunctive relief ordered herein. Plaintiff brings no claims against her, and this defendant did not participate in the briefing on summary judgment.

condition causes light sensitivity, sun blindness, and headaches with exposure to bright lights. Shawnee's eye doctor added transition lenses to his eyeglass prescription before he transferred to Pinckneyville Correctional Center in late 2023. *Id.*

Pinckneyville's eye doctor, Dr. Gentry, approved the transition lenses. When Plaintiff received his new eyeglasses five months later, however, they had no transition lenses. Wexford's Regional Director denied them as unnecessary. Plaintiff met with Dr. Gentry to discuss the matter, and the doctor explained that Wexford routinely denied transition lenses when he prescribed them. Dr. Gentry agreed to prescribe them again, but never did so, and also failed to address Plaintiff's symptoms. *Id.*

The Court reviewed this matter under 28 U.S.C. § 1915A and allowed the following two claims to proceed past screening:

Count 1:    Eighth Amendment claim against Wexford for denying Plaintiff's initial prescription for transition lenses to save on the cost of inmate medical care.

Count 2:    Eighth Amendment claim against Dr. Gentry for denying Plaintiff's second prescription for transition lenses and for failing to treat his complaints of extreme light sensitivity, sun blindness, headaches, and vision impairment at Pinckneyville.

(Doc. 12). In their Answers, Defendants raised Plaintiff's failure to exhaust administrative remedies as an affirmative defense. (Docs. 25, 37).

## MOTIONS FOR SUMMARY JUDGMENT

Defendants Wexford and Gentry now move for summary judgment on the issue of exhaustion of administrative remedies. (Docs. 54, 55, 57). Both defendants argue that Plaintiff filed this lawsuit before appealing the only grievance he submitted about transition lenses, in violation of the PLRA's requirement that he exhaust all available administrative remedies before bringing suit in federal court. *See* 42 U.S.C. § 1997e(a). Wexford also points out that Plaintiff's

grievance made no mention of the private medical corporation.  (Docs. 54, 55).  On these grounds, Defendants seek summary judgment on both claims.

Plaintiff opposes summary judgment.  (Doc. 60).  In his response filed July 15, 2025, he acknowledges filing one grievance about this matter and "concedes in part to the fact Plaintiff filed suit two weeks before appealing it through the final leg of the appeal process." *Id*. at ¶ 5.  However, he asks the Court to excuse him from the PLRA's exhaustion requirement because he considers it an "extreme pain to wait for a response from the ARB." *Id*.  He argues the ARB is "incompetent," so waiting for a decision would be unfairly prejudicial and futile. *Id*. at ¶¶ 2, 5.

In a supplemental response filed July 29, 2025, Plaintiff provided a copy of the ARB's response dated April 25, 2025, which he received in another case.  (Doc. 61, p. 3).  The ARB denied Plaintiff's appeal and indicated the facility appropriately addressed the matter. *Id*.  Plaintiff faults Defendants for failing to produce the ARB response issued while this action was pending and for indicating that the ARB decision was still pending as of April 15, 2025. *Id*.

### FINDINGS OF FACT

For purposes of the pending motion, the following material facts are undisputed (*see* Findings of Fact (FOF) at Docs. 55 and 57):[2]

Plaintiff transferred from Shawnee to Pinckneyville on or around November 22, 2023. (FOF 9, Doc. 55).  When he arrived at Pinckneyville, he received a copy of the "Individual in Custody Orientation Manual," and he completed the Individual in Custody Orientation Program. *Id*.  Plaintiff was aware of the Illinois Department of Corrections' (IDOC) grievance process and used it to file more than 2 dozen grievances at Shawnee and Pinckneyville.  (FOF 10-66, Doc. 55).

---

[2] Dr. Gentry adopts Wexford's proposed findings of fact and incorporates them by reference into the summary judgment briefing at Docs. 55 and 57.  Plaintiff does not dispute any proposed findings of fact and does not present evidence contrary to them in his response at Doc. 60.

He filed only one grievance about the issues in this case at Pinckneyville: Grievance #K59-1024-3809.  (FOF 62, Doc. 55; FOF 7, Doc. 57).

In Grievance #K59-1024-3809 dated October 2, 2024, Plaintiff complained about the denial of a prescription for transition lenses, as follows:

> <u>Summary of Grievance</u> (Provide information including a description of what happened, when and where it happened, and the name of identifying information of each person involved.):
>
> I was seen by the eye Doctor on or about August 20, 2024. I had eye glasses ordered with transition lenses. I received my glasses (approximately) 4 weeks later my transition lenses were not in my glasses. This is the second doctor to order these lenses to help me combat the light sensitivity and severe sun blindness. I am in constant pain due to the harsh lighting and the Doctors agreed on a course of treatment to help me not be in pain. The Doctor here and in Shawnee ordered transitional lenses to be added to my prescription, why weren't they authorized or ordered? By not giving me the transitional lenses in my prescription violates my Constitutional right to medical treatment. See / Harrison v. Barkley 219 F3d 132, 136 (2d Cir. 2000); Gutierrez v. Peters, 111 F3d at 1373; McGuckin v. Smith 974 F2d 1050, 1059 (9th Cir. 1992) "Courts consider the following factors, among other in applying this test:" the existence of an injury that a reasonable doctor or patient would find important or worthy of comment or treatment; the presence of a medical condition that affects an individual's daily activities; or the existence of a chronic and substantial pain" See eg Chance v. Armstrong 143 F3d 698, 702 (2d Cir. 1998); McGuckin v. Smith 974 F2d at 1059-60. My vision or lack thereof meets all of the above applied tests.  As I have constant headaches temporary vision loss after being in sunlight and affects my everyday activities. The Supreme Court wrote that the Constitution prohibits officials from "Intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed" Estelle v. Gamble 429 US at 104-05 (emphasis added). By denying my transitional lenses in my prescription is "intentionally interfering with prescribed medical treatment." Therefore violating my constitutional right to medical treatment.  EOG.
>
> <u>Relief Requested</u>:
> - Order and Issue my glasses with the transitional lenses as prescribed.
> - Any other relief this Department deems necessary.

(FOF 48, Doc. 55; FOF 7, Doc. 57).  Plaintiff marked this grievance as an emergency.  *Id*.

Pinckneyville's grievance office received Grievance #K59-1024-3809 on October 4, 2024. (FOF 8, Doc. 57). It was forwarded to a counselor for a response on October 10, 2024. *Id*. A Grievance Officer issued the following response on November 6, 2024:

<u>Nature of Grievance</u>: Medical Treatment.

<u>Facts Reviewed</u>: Grievant claims he was seen by the eye dr around 8/20/24 and had glasses ordered with transition lenses. Grievance claims that when he received the glasses 4 weeks later the transition lenses weren't in there. Grievance claims this is the second doctor to order these lenses to combat the light sensitivity and severe sunblindness. [sic] and he's in constant pain with the harsh lighting. Grievant claims not getting the transition lenses violates his rights, he has constant headaches and temporary vision loss.

<u>Relief Requested</u>: Order and issue my glasses with the transitional lenses as prescribed. Any other relief this department deems necessary.

RESPONSE: Per HCUA: Patient saw Dr. Gentry 8/12/24, and at that time the dr ordered regular "crystal" lenses for the patient, not transition lenses.

<u>Recommendation</u>: Based on a total review of all available information, it is the recommendation of this Grievance Officer that the grievance be DENIED.

(FOF 49, Doc. 55; FOF 8, Doc. 57). The Chief Administrative Officer (warden) concurred on November 7, 2024. *Id*. The bottom section includes the following statement from Plaintiff:

Offender's Appeal to the Director: I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.).

(FOF 50, Doc. 55; FOF 9, Doc. 57). Plaintiff signed the "Offender's Appeal to the Director" on November 27, 2024. *Id*. The ARB received his appeal on December 4, 2024. *Id*. The ARB denied the appeal on April 25, 2025. (Doc. 61, p. 3).

Plaintiff filed his Complaint against Wexford and Dr. Gentry pursuant to 42 U.S.C. § 1983 on November 13, 2024. (FOF 1).

<u>DISCUSSION</u>

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party, *i.e.*, the prisoner. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The district court's role on summary judgment is generally not to weigh evidence or judge witness credibility. However, when presented with a motion for summary judgment on the issue of exhaustion, district court's approach to factual disputes is different.

In *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), the Seventh Circuit instructed district courts to conduct an evidentiary hearing to resolve contested issues of fact concerning exhaustion. The Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460, 464 (June 18, 2025), when it recently held that exhaustion disputes must be reserved for a jury if contested facts on exhaustion are intertwined with factual disputes on the merits of a claim. Thus, when the district court is presented with a motion for summary judgment on exhaustion with material facts in dispute, it must consider whether intertwinement between exhaustion and the merits requires a jury trial.[3]

---

[3] The Supreme Court decided *Perttu* while the parties were still briefing the issue of exhaustion, so the Court requested supplemental briefing to address the impact of *Perttu* on the pending motions. (Doc. 63). After reviewing Defendants' Supplemental Briefs (Docs. 64, 65) and Plaintiff's Response (Doc. 67), the Court finds that *Perttu* is distinguishable. Unlike *Perttu*, the material facts surrounding exhaustion are not in dispute. There is also no intertwinement between the facts underlying exhaustion and the merits of the claims. This case involves Eighth Amendment medical deliberate indifference claims arising from the denial of transition lenses. It does not involve a retaliation claim, like *Perttu*. The questions on exhaustion can be resolved without addressing the questions on the merits. Thus, *Perttu* poses no barrier to this Court's decision on the pending motions.

No hearing is required when no material facts are disputed and only legal questions remain. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009). In this case, no material facts are in dispute. Therefore, the pending motions can be resolved without a hearing.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before bringing a suit in federal court about the conditions of his confinement. *Pavey*, 544 F.3d at 740. To properly exhaust, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

The Illinois Administrative Code sets forth the grievance process that applies to an inmate in the custody of the Illinois Department of Corrections. 20 Ill. Admin. Code § 504.800, *et seq*. (2017). The regulations generally require an inmate to attempt informal resolution of his grievance with his counselor within 60 days of the incident, occurrence, or problem giving rise to the grievance. 20 Ill. Admin. Code § 504.810(a). If the grievance is not resolved informally through the counselor, the grievance must be submitted in writing to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO) (warden). 20 Ill. Admin. Code § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with this response, he files an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 Ill. Admin. Code § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision.

*Id.* The inmate must attach copies of responses from the grievance officer and CAO to his appeal. *Id.* The ARB then considers the matter and submits a written report of its findings and recommendations to the Director, who makes a final determination within 6 months after receipt of the matter, when reasonably feasible. 20 ILL. ADMIN. CODE §§ 504.850(d), (e).

If he faces an emergency, an inmate can use an alternative procedure to file his grievance by submitting the emergency grievance directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If the CAO deems the grievance an emergency, the grievance is expedited for processing in whatever manner the warden specifies. *Id.* If deemed a non-emergency, the grievance is then resubmitted in accordance with the standard grievance procedure outlined above.[4] 20 ILL. ADMIN. CODE § 504.840(c).

Plaintiff was required to exhaust all available administrative remedies in compliance with the Prison Litigation Reform Act (PLRA) because he was a prisoner when he filed this civil suit about the denial of transition lenses. 42 U.S.C. § 1997e(a); *Chambers v. Sood*, 956 F.3d 979, 984-85 (7th Cir. 2020) (citing *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004)). But Plaintiff filed suit while he was still in the process of exhausting his available administrative remedies. He filed a single grievance about his transition lenses, Grievance #K59-1024-3809, which was filed October 2, 2024, received in the grievance office on October 4, 2024, and forwarded to a grievance officer for a response on October 10, 2024. (FOF 49, Doc. 55; FOF 7-8, Doc. 57). The grievance officer denied it on November 6, 2024, and the CAO concurred on November 7, 2024. *Id.* Plaintiff filed his Complaint on November 13, 2024. (Doc. 1). Plaintiff appealed the CAO's decision to the ARB on November 27, 2024, after filing the instant lawsuit (FOF 50, Doc. 55; FOF 9, Doc.

---

[4] Under certain circumstances, which are not applicable in this case, an inmate may submit his grievance directly to the ARB. *See* 20 ILL. ADMIN. CODE § 504.870(d).

57).  The ARB received his appeal on December 4, 2024 and denied it April 25, 2025.  (Doc. 61, p. 3).

Plaintiff concedes that "[he] filed suit two weeks before appealing [Grievance #K59-1024-3809] through the final leg of the appeal process."  (Doc. 60, ¶ 5).  He asks the Court to excuse him from the PLRA's exhaustion requirement because he considers it to be an "extreme pain to wait for a response from the ARB" when the ARB is allegedly "incompetent."  *Id*. at ¶¶ 2, 5.

The Court cannot excuse Plaintiff for his failure to exhaust available remedies under these circumstances; proper exhaustion is mandatory.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Prison officials must have an opportunity to resolve disagreements internally before a plaintiff turns to the court for help.  "Until the issue of exhaustion is resolved, the Court cannot know whether it is to decide the case or the prison authorities are to."  *Pavey*, 544 F.3d at 741.  For this reason, the Seventh Circuit demands strict compliance with the exhaustion rules.  *Doe v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).  This means that a plaintiff cannot sue first and exhaust later.  *Ford v. Johnson*, 362 F.3d 395, 398-400 (7th Cir. 2004).

While Plaintiff asserts that the grievance process is futile, the Seventh Circuit Court of Appeals rejected a futility exception to the exhaustion requirement years ago.  *Greene v. Meese*, 875 F.2d 639, 641 (7th Cir. 1989) (rejecting argument for a futility exception to the common law administrative exhaustion regime that applied to inmates before the creation of § 1997e).  The Court reasoned, "[n]o one can *know* whether administrative requests will be futile; the only way to find out is to *try*."  *Id*.  The undisputed facts reveal that Plaintiff filed this lawsuit prematurely while his grievance was unexhausted.[5]  As such, Defendants motions for summary judgment must be granted.

---

[5] Plaintiff asserts that Defendants did not timely produce a copy of the ARB's decision issued during the pending action, and Defendants are reminded of their obligation to do so in a timely manner or as a supplement to their initial

<u>CONCLUSION</u>

The Motions for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Wexford Health Source, Inc. (Doc. 54) and Dr. Gentry (Doc. 57) are **GRANTED**.  **COUNTS 1** and **2**  and **ALL DEFENDANTS** are **DISMISSED** without prejudice based on Plaintiff's failure to exhaust administrative remedies before bringing this suit in federal court.  As no claims remain pending, the entire action is **DISMISSED** without prejudice.

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues he plans to present on appeal.  *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2).  Moreover, if the appeal is found to be nonmeritorious, he may also incur another "strike."  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  February 24, 2026**

s/ *Staci M. Yandle*
**STACI M. YANDLE**
**Chief U.S. District Judge**

---

disclosures. However, Plaintiff's production of the ARB's denial dated April 25, 2025 does not contradict Defendants' statement that the ARB's decision remained pending as of April 15, 2025 or Defendants' argument that Plaintiff filed suit while his grievance was unexhausted.